www.cityofchicago.com www.cityofchicago.com www.cityofchicago.com www.cityofchicago.com www.cityofchicago.com www.cityofchicago.com Good morning, I believe that we have judge Sykes on the telephone. Is that right judge Sykes? Yes, good morning, I'm here Excellent. All right Well, we have one case for argument this morning Tybursky against City of Chicago appeal number 18-3000 and we are ready to hear from mr. Ehrlich if he is on the line. I Am your honors. Thank you. May it please the court counsel? Let me first apologize up front. I have this cough that's been going on for quite some time So that is I'm not only going to come out at some point Turning first Okay, turning first to the promotion claim the plaintiff argued that the two interviewers told them he could answer a question about centrifugal pumps are Referring to turbine centrifugal pumps. I was then penalized for answering the question in the manner. They had just approved The district court gave little attention to this argument And accepted the argument defendant raised in its reply on summary judgment That the plaintiff would still have failed the exam due to his scores on the other four questions Reasonable inference that plaintiff was misled by the interviewers in this issue and in a manner for which he was then penalized Which was evidence of pretext and discrimination at least for summary judgment purposes Was there for never considered by the court? on appeal Excuse me. This is judge wood. Mr. Ehrlich. I'm Curious as to why the answer to the centrifugal pump question mattered If as appears to be the case Mr. Tversky had not complained about any of the other questions. The district court was was saying even if there was some Miscommunication about the pump question his score still would have been a failing score in the oral Yes, and that was what the defendant argued in the reply and that's what the court pulled below Just be clear. I was not at that level. I only came in for the appeal and this goes to the waiver issue Which I believe is where where your judges where your question is going on We had cited to the case of general refractories versus first state insurance Regarding the waiver issue and in that case The defendant insurance company had raised a new argument on appeal Regarding the definition or degree of causation of obsessive and the plaintiff's insurance claim Plaintiff insisted on appeal that that argument was waived because it was never presented below the court noted while generally a new issue may not be addressed on appeal a Within the bounds of reason we believe that the plaintiff meets that definition Mr. Excuse me, this is just a knee. How is this? Reframing an argument that was made below you were very specific below with the district court Challenging your clients answer to that one particular question and the fact that he didn't get full credit After they permitted him to explain the process with respect to this pump But now you're expanding it to all of the questions. How does that fall within the framework of the first aid case? Well, my predecessor braved the argument he raised and stuck with that what I'm arguing And I understand it's not clear-cut Is that if you look at the broader issue of inaccurate scoring and that's what I'm trying to argue And to attack some of the other way the other questions were graded is the more fuller explanation part of this To use a baseball metaphor. I think we're still within the friendly confines of Ripley Park Maybe we're not within the infield, but I think so then the broader general sense of the park Let me take one step back then if we just focus on the particular question that you have argued shows the discrimination here, how does receiving permission from the interviewer to answer a question in a particular way Suggests that he should have gotten full credit for that question. I The Question the interviewers could have easily said, you know stick to the question as it is as opposed to sure No problem. Go ahead and answer in that way their Question that mr. The answer to mr. Diversity provided still reference centrifugal pumps There were different types of centrifugal pumps. He was talking in one area regarding turbine centrifugal pumps So it it wasn't like He was giving something totally off base He was still answering the question just referring to one specific type of a centrifugal pump and when he got the okay to do it Then was penalized for it that's where our game comes on that part of it So this is judge wood again. I want to come at this again. It's slightly different Perspective one of the questions. I always ask myself anyway when we're looking at this notion Are we simply expanding an argument already made or we introducing new? material is What would have been different if we had known that the new material or the different the proposed? Expansion was there and I take it that you are Looking at those forms that the interviewers had and the little tick marks that they seem to have made on some of the Question and you're drawing an inference that means both that those topics were covered and they were covered satisfactorily and they led to a certain score and and it just strikes me that there's a lot of factual material that you are inferring from those little tick marks and I believe the city would have wanted an opportunity to introduce its own Evidence about that. That's one of the reasons it seems to me that the evidence itself that relates to the other questions is really far afield from the pump question Yeah, and I certainly understand that point and perhaps If this had been the flip side where the city was raising the argument And or rather the plaintiff who brought the motion for summary judgment And then we had argued about these other grades Well, let me step back from that one The argument of a city raised regarding well to get the pump question. He failed the other scores That did not come out until a reply brief So the only way that the plaintiff could have added in directly to that point would have been a survey box Why my prior suffragette didn't do that? I don't know but that's something over and above if the city had made that argument in the initial motion saying he failed Every single question got a poor score and almost every single question and then the response only picked out one of those questions I think the city And I've stood in stronger ground I would be on weaker ground but because the broader issue of well, he failed all the other questions to only came out in reply. I Think that gives me some arguing that it gives me some wiggle room to bring that up now But why wasn't it your responsibility to raise that in response? Saying that the answers to all of the questions are what raised the issue of fact You are your right when I say you I mean your client I understand I understand I can't speak for my prior sister did or didn't do and certainly I would have preferred that He would have done that. I can't answer that question Yes, it would have been the best practice to have done that but he did it. So I'm stuck with what I've got at this point Mr. Ehrlich, this is judge Sykes. Why isn't this whole dispute about procedure? Just a sideshow No, reasonable jury could sign for your client If the case were to proceed before a jury because he still would not have had a passing score Even if he was given the benefit of a maximum score on the Contested question. So the procedural dispute seems to me to be entirely beside the point he fails on the merits And your honor would be correct if the only issue that's going to be considered is the turbine pump question Well, that's a special question if he's not qualified and that's the reason He didn't get promoted and then nothing else matters on the promotion claim Yes, of course So we argue there are other scoring inconsistencies and errors and if you count up the points He should have gotten there would have been passing scores by both interviewers So if I lose on the way of a question then your honor is correct If the court acknowledges and allows those other arguments be considered Then we have a question of fact as I allege in the brief there were mistakes made and some of the other questions And what is the link between those mistakes and your client's age? Well starting from Take the pump question for example And we're looking at reasonable inferences when they sort of fake sandbag them Allowing you to answer one way, but then penalize it for doing that. I think that creates evidence of pretext and discrimination. That's one What What is the link mr. Ehrlich between these scoring discrepancies that you base the failure to promote claim on and your client's age? Is there any evidence that would make an age-related? Inference reasonable rather than just there were scoring discrepancies Sure, the other point would be the broader issue of what we argue is the culture of age discrimination There's a tie and we believe to the hostile environment It wasn't just one person doing age discrimination wasn't just people doing age discrimination. It was numerous people Those are all co-workers that was no one who was responsible for making a promotion decision One of the people but one of the people was the chief operating engineer who is the power at the plant There was evidence against that individual as well that individual did not was not at the interview panel The people at the interview panel or other chief operating engineers But chief operating engineer at Central Park where he was first stationed We argue that there was evidence against him for discrimination as well age discrimination. So there is a time I'm mr. Ehrlich. You are down to three minutes and 40 some seconds if you would like to save your rebuttal time Yeah, you know what the show is going to get into but I'll move on what's going to be about Chargine being part of the EEOC charge, but I'll go to the rest. Thank you All right. Thank you Miss Hornstra. Are you on the line? I am I am. Thank you, Your Honor And thank thank you again, Your Honor's may it please the court Mr. Tversky a longtime city employee received a promotion to group a engineer in 2013 at the age of 74 Less than a year later. He applied for another promotion to a higher position But he like more than half the other candidates who applied did not receive the promotion Mr. Tversky claims in this lawsuit that this was the result of age discrimination But there is no evidence that the decision to select other candidates for the 2014 promotion had anything to do with. Mr. Tversky's age Mr. Tversky's attempt to bring federal claims based on alleged workplace harassment also fail First any claims arising from mr. Tversky's time at the Jardine water treatment plants aren't properly before this court because he didn't preserve Any such claim by filing an EEOC charge? about that time As for the claims he did preserve concerning his time working at the Central Park pumping station In 2015 the record doesn't show he experienced any actionable adverse employment action now the discussion earlier obviously was Really focused on the failure to promote claim And mr. Tversky's evidence on this point Really just boils down to the fact that Mr. Tversky was obviously older than the other candidates that he wasn't promoted And he had some criticisms of how his answers were scored But all this is against the backdrop where there were 29 candidates who are eligible for the promotion if they pass the oral exam Of those only 13 did so Mr. Tversky was among 16 others or among 16 who did not Pass the oral portion of the interview of the examination And he doesn't have any basis to establish that his failing score on the oral examination Had anything to do with with his age Mr.. Tversky this is this is judge would miss Hornstra So is it the city's position that he would have had to show that one of those? 13 people one of the people promoted had also failed the oral exam just like him But that younger person presumably under the age of 40 Was promoted in other words is it the lack of a comparable employee. That's the flaw here I Don't know I mean that the district court seemed to look at it that way I mean his theory now is that there was you know some animus against him based on his age and that that Meant that you know that his failing score was given because he was because he was older Seems to think that they were trying to trap him somehow he said can I answer this pump question? With respect to one particular model they say yes, and he thinks they're sandbagging him Right, but it is a failing that there's no there's no evidence that anyone who was younger employee who was given the promotion You know Gave comparable answers to him and then was scored better than he was But but there's just a real failing in this notion that the scoring of his exam was somehow Flawed in the first place and absolutely nothing tying it to his age This thing about the question on pumps You know his idea the the contention that he was told he could answer one way And then he was penalized for limiting his answer in that way You know one of the questions. I think really one of the questions that one of your honors raised. I think accurately You know characterizes as a miscommunication more than anything else But you know it's a general matter if an interview asks if you can answer a question about a process By describing something more limited and the interviewer interviewer agrees You know that doesn't necessarily mean the interviewers agreeing the interviewer is going to get full credit for giving a limited answer The interviewer might interpret that request to give a limited answer as an indication that the interviewee's knowledge is limited And certainly here. There's no evidence that interviewers offered Tversky any assurance that limiting his answer the turbine pumps would be enough for a top score on that question you know wasn't it any an indication that it was any kind of bait-and-switch and Beyond that there's just not the slightest hint of evidence that the interviewers handling of that question or any other question was motivated By mr.. Tversky's age And and beyond that as we point out in our brief You know even giving all inferences in mr. Tversky's favor his assessment that he fully to answer the question and should have received a whole five points for that question rather than two points is You know a purely self-serving assessment without any objective support but as we pointed out in our brief the district court recognized even if Mr.. Tversky had been given full credit on the pump question that was one of five questions And even giving him full points for that Question wouldn't have been enough to put him above the 60% required for the oral portion of the of the interview And and we explained in our brief that these new ideas this new idea about errors in scoring on the other questions As your honors all recognized in discussing this with mr.. Ehrlich wasn't raised below And I think as judge woods question Really illustrated you know this is this is exactly a scenario This is a type of center that illustrates why there is a waiver rule You know theory on appeal that wasn't raised before the district court is that for each of the five oral interview questions Which were rated on a one-to-five scale? An interviewee was entitled to a point for each of the bullet point answers listed as a possible response on the interviewer score sheet Now we make explain in our brief that this doesn't make sense as a matter of elementary logic Because only two of the questions had only five bullet point answers suggested But to the extent that mr. Tversky's failure to promote claim depends on the notion That the scoring of his oral exam was flawed because for some questions the number of bullet points interviewers checked off was greater than you score That's a theory that should have been presented before the district court when the parties were reducing evidence for summary judgment because you know the interviewers would have had a chance to Explain more fully how that scoring works, so you know this is not As mr. Eric has argued a fuller explanation of an argument that was raised below. It's an entirely new theory for his failure to promote claim and in the notion that Mr.. Tversky's prior attorney didn't have the opportunity to make this argument in the district court unless he filed a sir reply is Incorrect I mean the city pointed out in its summary judgment brief that mr. Tversky wasn't promoted because of his failing scores on the oral interview question He responded that he should have been scored higher on one of the five questions Then the city pointed out in its reply brief, but this wouldn't have been enough to raise his score This wasn't a new argument that the city was presenting in its reply brief. It was merely pointing out the inadequacy of the argument that mr. Tversky made If he had a theory then about other problems with the scoring of his exam questions It was up to him to raise those in the district court, and he certainly had the opportunity to do so And again beyond Mr.. Tversky's criticism of how the exam was scored or how he was told he could answer a particular question There to remain no evidence that anything about the promotion process And his failure to be promoted Was based on any animus due to his age It's you know worth noting that one of the interviewers Who was one of the people who did not promote him in 2014? Participated in giving him a promotion less than a year earlier You know to and he was now then less than a year later Looking to be promoted to a higher level that undercut It excuse me miss Hornstra, I just wanted since I think we have discussed the failure to promote claim pretty well And I believe mr. Ehrlich may want to return to retaliation or hostile environment whether there was anything You wanted to add on either of those points? Yes, certainly I We the the Jardine claims, you know, he worked at Jardine after he was at Central Park None of the allegations he makes about his time at Jardine were the subject of any EEOC charge You know the case law has cleared that at a minimum You know the charges have to relate to the same individuals and the same general conduct and that's clearly not met where it's an entirely different workplace with different people If I could ask you please the His second EEOC charge mentioned O'Malley who was an employee at the Jardine facility I know he wasn't working there at the time. Mr. Taberski wasn't working there at the time But how should this mention of an employee from that facility impact your exhaustion requirement? Well, he he claims that O'Malley that one of the employees at Central Park had harassed him at O'Malley's Direction and then I don't believe he complained like his his allegations about his time at Jardine Didn't involve any complaints about anything that O'Malley did to him at Jardine So they're just I think it's entirely separate things entirely different timelines different sets of conduct I think the only thing he ever said about O'Malley was that the two of them were at a seminar one and Mr. O'Malley remarked to Mr. Taberski that he was planning to retire and then said not like you You're going to be here another 15 years or something like that At Central Park, you know his allegations of true involve Conflicts with some of his co-workers and some admittedly obnoxious behavior it seems like there were there were definitely personality conflicts and he He there's instances of colleagues engaging and some unprofessional taunting sometimes relating to his age but he doesn't There's a few problems mainly as a district court recognized there's no basis for employer liability They he mentioned that the chief operating engineer at Central Park He believes engaged in Harassment against him or age discrimination, but there's actually no evidence of that the chief operating engineer Andre Holland Some complaints were brought to his attention and Taberski complained that one of his co-workers Brian Sumner was You know had made comments about his age and they They had conflicts, but in fact Holland whenever Sumner and Sumner was at the same level as Taberski when the two of them worked together Holland effectively demoted Sumner In order to make Taberski his supervisor to try to alleviate some of those those conflicts the other employees that he had Conflicts with actually were working at a level below him and there's no evidence that there was any Any adverse action taken against him based on either, you know based on any harassment or or based on his complaint About it, you know, he was he was transferred to Jardine after an altercation with Brett with mr. Metcher who had been promoted and They they had a discussion he claims that Metcher made comments about his age But in fact, the evidence is simply that they met your had complaints about his work performance and mr Taberski Taberski said he interpreted those those complaints being about his age There's not actually any evidence of that and they're In the workplace. They had an argument once and mr Taberski by his own admission swung a foot long metal wrench at a bench and hit a metal bench and it was based on that incident which he was Found to have violated the violet violence in the workplace policy. It was based on that that he was transferred to Jardine and not because of any That you know retaliation for complaints or or age discrimination And if there are no further questions, we would ask that you affirm the judgment of the district court Judge Sykes, you're okay Yes, thank you. All right. Thank you. All right. Thank you very much. Miss Hornstra anything further. Mr. Ehrlich Yes, your honor With respect to the Jardine plant as part of is or is not part of the EOC complaint It's very clear that numerous courts have argued in rules Anything reasonably related to an EEOC charge may still be pursued even if not specified in the EEOC charge And the remedial purposes of the statute requires that those charges be construed with utmost liberality But the more relevant question or test here What several courts have relied on is whether the EEOC investigation could have reasonably Expected to have included the issues in question We cite to a couple of cases in our brief Novitski, Baraki and Brindley, which all emphasize that point The answer here is clearly yes to that question The April 2015 charge alleged that employees supervisors and managers Continued continue that's a quote just to mean and ridicule and harass them as retaliation and because of age that July 2015 EEOC complaint again noting as a continuing violation Referred to being reassigned to an undesirable location When it is certainly a whole different set of people that he's working with at Jardines What kind of investigation do you think the Commission is supposed to do when a Complaint about one facility such as Central Park for a very big organization is made Are they supposed to just open up the books and investigate? every office every every plant Now what they wouldn't be expected to do is okay. Mr. Dabrowski this other area Undesirable location, which one are you talking about here? Oh, that's Jardines And you talk about all these acts of the continuing violation that these things occur anywhere else. Yes, they did They occurred at Jardines, but you know, if you had tied it if he had been able to tie this Unfortunate behavior to maybe a leader in the in the In in the organization Then maybe other plants come in because they're under that same leader, but I just don't see any Personnel link between this this case the Central Park people and the Jardines people I Think we're looking at two different ways to approach this one of as your honor just referred to but overall gist is Are there issues that would have been investigated by the EOC because courts want to make sure the EOC has a chance to look into those Issues and it's not limited to we're only going to look at what meets your game We're only going to look at what this individual did you're talking about a continuing violation? You're alleging managers supervisors and and employees and your three charges who else might be involved Other test to be involved there is where there are other advantages and what undesirable location you talking about That is an easy and obvious question for the investigator to have asked and that Accomplishes than the purpose of going to the EOC in the first place Your time is quickly running out so if you would like to wrap up that would be appropriate Sure. Well, the only other issue is which has been touched on it's not simply employees who are harassing The top person at the plants is the chief operating engineer The second person in charge who's in charge of everybody on that shift is assistant chief operating engineer There's evidence that both of those individuals were involved in the retaliation and discrimination With that I would press All right. Thank you very much. Thanks to miss Hornstra as well The court will take this case under advisement and we will be in recess as the next case is submitted on the briefs Thank you You We're sorry your conference is ending now, please hang up